UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| KARLA GONZALEZ and JAIME RETIGUIN BARBA, SR., | Case No. 2:16-cv-02909-MMD-VCF |
|---|---|
| Plaintiffs, | ORDER |
| v. | |
| ALLIED COLLECTION SERVICES, INC., | |
| Defendant. | |

**I. SUMMARY**

Before the Court is Defendant Allied Collections Services, Inc.'s ("Allied") Motion to Dismiss ("Motion"). (ECF No. 15.) Plaintiffs Karla Gonzalez ("Gonzalez") and Jaime Retiguin Barba, Sr. ("Barba") responded. (ECF No. 18.) Allied replied (ECF No. 19) and filed additional materials as errata (ECF No. 20).[1] For the following reasons, the Court grants in part and denies in part Allied's Motion.

**II. BACKGROUND**

The following allegations come from Plaintiffs' First Amended Complaint ("FAC") (ECF No. 10) unless otherwise indicated.

Plaintiffs Gonzalez and Barba allege that Allied violated certain provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), by engaging in

---

[1] Because the Court considered Allied's reply, the Court will deny Plaintiffs' Motion to Strike (ECF No. 21) and grant Allied's Motion to Exceed Page Limits (ECF No. 22). However, the Court reminds Allied that it did not comply with the requirements for seeking to exceed page limits in LR 7-3(c).

unfair practices to collect on a mutual family member's debt to various medical providers ("Debt"). The family member is Gonzalez's husband and Barba's son, Jaime Retiguin. Plaintiff Barba shares the name "Jaime Retiguin" with his son. The Court refers to Plaintiff Barba as "Barba" and to his son as "Retiguin."

Allied, apparently acting as a debt collection agent for the medical providers, obtained a judgment ("Judgment") in a state-court proceeding ("Debt Action") against Retiguin in the amount of $5,101.24 plus costs and interest of $208.10 on June 2, 2016. Allied obtained a writ of execution naming "Jaime Retiguin" as the garnishee on June 22, 2016. Possibly due to Retiguin and Barba's shared names, Barba's bank account was garnished $4,448.31 instead of Retiguin's. Barba notified Allied of the mistake, and Allied reimbursed the funds except for a bank fee and garnishment fee.

Allied obtained a writ of execution naming Gonzalez as the garnishee on September 1, 2016. The writ of execution included the full amount of the Judgment and required Gonzalez to contribute 12.5% of her income—the amount of her income that constituted community property between her and Retiguin—to the Debt.[2]

Plaintiffs allege that it was unlawful for Allied to seek a writ of execution against Gonzalez on September 1, 2016, because Allied had already received payment for the Debt at that point. According to Plaintiffs, Allied received payment for the Debt from Retiguin's health insurance and from the Victims of Crime program between July 21, 2016, and October 13, 2016.

Allied disputes that it received payments prior to seeking a writ of execution against Gonzalez on two grounds. First, Allied contends that payments were issued to the medical providers directly, not Allied. (ECF No. 15 at 16 (citing ECF No. 15-5 at 12).) Second, Allied essentially contends no medical provider received payment until September 7, 2016. (*See id.* at 17.) Gonzalez alleged in the Debt Action that one of the medical providers

---

[2] Plaintiffs' FAC states that Gonzalez was required to pay "12.5% of the Judgment" (ECF No. 10 at ¶30), but this appears to be an error based on the actual writ of execution (ECF No. 15-3 at 3). The Court takes judicial notice of the documents filed in the Debt Action. *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

received a check on August 9, 2016, from the California Ironworkers Field Welfare Benefit Plan that was approved on July 21, 2016, but Allied contends that the payment was invalid because it was reversed on September 7, 2016, and replaced with a new check from Anthem BCBS. (*Id.* (citing ECF No. 15-5 at 12).)

Gonzalez filed a motion requesting the court exclude her from Allied's garnishment on October 3, 2016. Gonzalez also allegedly notified the court that she was not responsible for the Debt and that the Debt was paid. Gonzalez was released from garnishment by court order in the Debt Action on November 23, 2016. The minutes from the hearing state the following:

> Garnishee Defendant's Counsel asserts the Garnishee Defendant [Gonzalez] was unsure what the debt was in regards to this signed confession of judgment. Counsel states they believe it was from medical bills, which they believed was paid by insurance or will be paid by victim of crimes [sic].
>
> Plaintiff's Counsel asserts in the supplement the Garnishee Defendant filed, they acknowledged it was community debt. Counsel states they are willing to release the garnishment as to the Garnishee Defendant.
>
> Court ORDERS the Claim of Exemption from Execution is GRANTED as [to] the Garnishee Defendant ONLY.

Plaintiffs filed their FAC in this Court alleging that Allied's conduct violated certain provisions of the FDCPA, specifically 15 U.S.C. §§ 1692e(5), 1692e(10), and 1692f.[3]

### III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8

///

---

[3]Plaintiffs raise claims in their response for violation of several provisions of the FDCPA that do not appear in their FAC: 15 U.S.C. §§ 1692e (generally), 1692e(2), and 1692d. (ECF No. 18 at 10-12, 18, 19.) These claims are not properly before the Court as they do not appear in Plaintiffs' FAC. (*See* ECF No. 10.) While Plaintiffs include a "catch-all" allegation in ¶ 74 of their FAC stating that Allied's conduct violates various unspecified provisions of the FDCPA, this does not give fair notice to Allied of the claims against which it must defend. Accordingly, the Court will grant leave to amend.

does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations—but not legal conclusions—in the complaint. *Id.* at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

**IV.     DISCUSSION**

Allied argues (A) that several allegations in Plaintiffs' FAC are barred by the doctrines of judicial estoppel or issue preclusion, (B) that Plaintiff Barba is not a consumer within the meaning of 15 U.S.C. § 1692a(3), (C) that Allied did not violate 15 U.S.C. § 1692e(5), (D) that Allied did not violate 15 U.S.C. § 1692e(10), and (E) that Allied did not violate 15 U.S.C. § 1692f. (ECF No. 15 at 11-27.) The Court will address Allied's arguments in that order.

    **A.     Judicial Estoppel and Issue Preclusion**

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a

4

clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). "Judicial estoppel requires that a party took a 'clearly inconsistent' position in a prior proceeding, that the party persuaded that prior court of that position, and that the party seeking to later assert an inconsistent position would 'derive unfair advantage' over the opposing party." *Neeman v. Bank of N.Y. Mellon*, No. 2:16-cv-02674-APG-PAL, 2017 WL 3484995, at *2 (D. Nev. Aug. 14, 2017) (citing *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1045 (9th Cir. 2016)). These factors are not "inflexible prerequisites or an exhaustive formula," and "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Hamilton*, 270 F.3d at 783.

"The doctrine of issue preclusion prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (quoting *Segal v. Am. Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979)). Under Nevada law,[4] issue preclusion applies if the following factors are satisfied: "'(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; . . . (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation'; and (4) the issue was actually and necessarily litigated." *Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d 912, 916 (Nev. 2014) (alteration in original) (quoting *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 710 (Nev. 2008)). The proponent of issue preclusion bears the burden of demonstrating that the doctrine applies. *See, e.g.*, *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009); *Marine Midland Bank v. Monroe*, 756 P.2d 1193, 1194 (Nev. 1988).

Plaintiffs make the general argument that issue preclusion does not bar any of their allegations because Gonzalez was not a party to the Debt Action. (ECF No. 18 at 14, 16.)

---

[4]The Court must apply Nevada's collateral estoppel rules in this case (not federal common law) because Allied seeks to give preclusive effect to a prior Nevada state court judgment (not a federal court judgment). *See In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003) (citing 28 U.S.C. § 1738).

However, Plaintiffs allege that Gonzalez filed a motion in the Debt Action and obtained a court order releasing her from garnishment. (ECF No. 10 at ¶¶ 35, 44.) Moreover, hearing minutes from the Debt Action identify Gonzalez as a "Counter Defendant" and "Garnishee Defendant." (ECF No. 15-4 at 22; ECF No. 15-6 at 12.) Without deciding whether Gonzalez was a party to the Debt Action, the Court concludes on other grounds that none of the allegations are barred by the doctrine of issue preclusion.

### 1. Allegation Regarding Debt Payments

Allied argues that issue preclusion and judicial estoppel bar the following allegation in Plaintiffs' FAC: "Between July 21, 2016 and October 13, 2016 Allied received payment for the Debt from health insurance and from the Victims of Crime Program." (ECF No. 10 at ¶ 24.)

Judicial estoppel does not bar this allegation because Allied has not shown that it is clearly inconsistent with a position Gonzalez took in the Debt Action. According to Allied, Gonzalez impliedly admitted in the Debt Action that Allied did not receive payment for the Debt when she asserted that only the original creditors received payment. (ECF No. 15 at 16.) Plaintiffs counter that the two positions are not inconsistent because Allied could not lawfully collect on the Debt when the Debt had been paid, regardless of who received the payments. (ECF No. 18 at 14.) The Court can reasonably infer that Allied would be unable to collect on debt for which the original creditors had received payment, particularly given that Allied has not asserted the Judgment was enforceable independent of payment to the original creditors (as it might be if original creditors had assigned the Debt to Allied).

Issue preclusion does not bar this allegation because Allied has not shown that the issue this allegation raises—whether Allied received payment for the Debt before seeking a writ of execution against Gonzalez—was necessary to the decision in the Debt Action. Allied contends that the court in the Debt Action conclusively established that "the [medical] providers, and not Allied, received payment for the Debt" (ECF No. 15 at 17), but this issue was not necessary to the decision in the Debt Action granting Gonzalez's claim of exemption from execution. The court in the Debt Action had at least two

6

independently sufficient reasons for granting Gonzalez's claim: (1) the Debt was satisfied and (2) Allied stated it was willing to release Gonzalez from garnishment. (*See* ECF No. 15-6 at 12.) The hearing minutes state only that Gonzalez's claim of exemption from execution was granted, not which of these facts formed the basis of the court's order. (*See id.*)

### 2. Allegation Regarding Timing of Debt Payments

Allied further argues that issue preclusion and judicial estoppel bar the following allegation contained in Plaintiffs' FAC: "The Writ of Execution included the full amount of the [J]udgment, even though Allied had already received payment for the Debt." (ECF No. 10 at ¶ 31.)

Judicial estoppel does not bar this allegation because Allied has not shown that it is clearly inconsistent with a position Gonzalez took in the Debt Action. Here, Gonzalez alleges the following sequence of events: Allied received payments on the Debt as early as June 21, 2016, then Allied sought a writ of execution against Gonzalez on September 1, 2016. (ECF No. 10 at ¶¶ 24, 29, 33.) Allied argues that this narrative elides an important detail—that the June 21, 2016 payment was reversed on September 7, 2016. (*See* ECF No. 15 at 17.) But even if that payment were reversed, it was not necessarily invalid prior to the reversal. Moreover, Allied contends it was immediately replaced with a check from another insurer. (ECF No. 15 at 17 (citing ECF No. 15-5 at 13-16).) Accepting Plaintiffs' allegations in the FAC as true, it is reasonable to infer that the earlier payment to the medical provider was valid until it was reversed, thereby harmonizing Plaintiffs' allegation that Allied received payment with Gonzalez's purported admission in the Debt Action that the payment was later reversed.

Issue preclusion does not bar this allegation because Allied has not shown that the issue this allegation raises—whether Allied received payments prior to seeking a writ of execution—was actually and necessarily litigated in the Debt Action. When Allied stated that it was willing to release Gonzalez from garnishment, the Court had sufficient grounds to grant Gonzalez's claim of exemption from execution. Allied has produced no evidence

that the court's order was based on a finding that any payments to medical providers were invalid.

### 3. Allegation Regarding Gonzalez's Duty to Pay

Allied further argues that issue preclusion and judicial estoppel bar the following allegation contained in Plaintiffs' FAC: "Gonzalez did not owe nor ha[ve] any responsibility in paying the Debt." (ECF No. 10 at ¶ 26.) Judicial estoppel does not bar this allegation because it is consistent with Gonzalez's position in the Debt Action that she could not have any duty in connection with a debt that had already been paid. Issue preclusion does not bar this allegation because the order in the Debt Action simply released Gonzalez from garnishment. The Debt Action did not establish whether Gonzalez owed a duty or responsibility in paying an allegedly satisfied debt.

### 4. Allegation Regarding Allied's Legal Right to Garnish

Allied further argues that issue preclusion and judicial estoppel bar the following allegation contained in Plaintiffs' FAC: "Allied did not have any legal right to garnish Gonzalez's wages when it repeatedly attempted to collect money to which it was not entitled." (ECF No. 10 at ¶ 34.) Judicial estoppel does not bar this allegation because it is consistent with the position Gonzalez took in the Debt Action that Allied could not collect on a paid debt. Issue preclusion regarding this allegation was not raised by Allied, though the doctrine would not apply because the Debt Action did not establish whether the Debt had already been paid.

### 5. Allegation Regarding Gonzalez's Garnishment Release

Allied further argues that issue preclusion and judicial estoppel bar the following allegation contained in Plaintiffs' FAC: "By court order, Gonzalez was released from garnishment on November 23, 2016." (ECF No. 10 at ¶ 44.) Judicial estoppel does not bar this allegation because it is a fact supported by the record (ECF No. 15-6 at 12)—not a position taken for the purposes of litigation. Issue preclusion does not apply because this allegation simply states a fact of which the Court may take judicial notice.

///

### 6. Allegation Regarding Prior Order

Allied further argues that issue preclusion and judicial estoppel bar the following allegation contained in Plaintiffs' FAC: "Because Allied finally released the garnishment against Gonzalez in Retiguin's Debt Action, no order or judicial decision on the merits was issued in that case." (ECF No. 10 at ¶ 48.) Judicial estoppel does not bar this allegation because Gonzalez did not take any position on this issue in the Debt Action. Issue preclusion does not bar this allegation for the same reason.

In sum, Allied has not carried its burden of demonstrating that issue preclusion or judicial estoppel bar any of the Plaintiffs' allegations.

### B. 15 U.S.C. § 1692a(3)

Allied argues that Barba is not a consumer within the meaning of 15 U.S.C. § 1692a(3). (ECF No. 15 at 11.) Under 15 U.S.C. § 1692a(3), "[t]he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." The parties' dispute centers on whether Barba is "allegedly obligated to pay any debt." Allied contends that Barba has failed to plead any facts showing that he was "allegedly obligated" to pay any debt. (ECF No. 15 at 12.) Plaintiffs counter that Barba was "allegedly obligated" to pay a debt because Allied garnished or levied $4,448.31 from Barba's bank account. (ECF No. 18 at 17-18.)

The Court agrees with Plaintiffs that Barba's allegation that Allied garnished or levied $4,448.31 from Barba's bank account suffices to show that he was "allegedly obligated" to pay a debt. Federal district courts in the Ninth Circuit have found that "the FDCPA . . . protect[s] consumers who were subjected to collection efforts for obligations they did not owe," *Davis v. Midland Funding, LLC*, 41 F. Supp. 3d 919, 924 (E.D. Cal. 2014); *see also Gonzalez v. Law Firm of Sam Chandra, APC*, No. 13-CV-0097-TOR, 2013 WL 4758944, at *3 (E.D. Wash. Sept. 4, 2013), though the Ninth Circuit has not yet spoken on this issue, *Davis*, 41 F. Supp. 3d at 924.

Allied cites to a single, out-of-circuit, federal district court case to show that the father of an adult son debtor is not "allegedly obligated" for his son's debt when dunned

9

by mistake. (ECF No. 15 at 11 (citing *Christy v. EOS CCA*, 905 F. Supp. 2d 648 (E.D. Pa. 2012).) The Court finds *Christy* less persuasive than *Davis* and *Gonzalez* because the court in *Christy* did not consider the Eighth Circuit's opinion in *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (8th Cir. 2011). In *Dunham*, the Eighth Circuit considered whether individuals who mistakenly received debt collection letters qualify as consumers under the FDCPA and concluded that they do. *Id. Davis* and *Gonzalez* explicitly considered and adopted the reasoning in *Dunham*, while *Christy* did not.

Accordingly, the Court finds that Barba is a consumer within the meaning of 15 U.S.C. § 1692a(3).

### C. 15 U.S.C. § 1692e(5)

Allied argues that Plaintiffs have not pleaded sufficient facts to support their claim that Allied violated 15 U.S.C. § 1692e(5), which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." (*See* ECF No. 15 at 12, 19.)

As to Gonzalez, Plaintiffs allege that Allied violated 15 U.S.C. § 1692e(5) when it opposed Gonzalez's claim of exemption from execution. (ECF No. 10 at ¶ 71; ECF No. 18 at 11.) Allied counters that its conduct was lawful (*see, e.g.*, ECF No. 15 at 20),[5] but it may not have been if Allied had already received payment as Plaintiffs allege. Accordingly, Plaintiffs have sufficiently alleged facts to show violation of 15 U.S.C. § 1692e(5) as to Gonzalez.

As to Barba, Plaintiffs allege that Allied violated 15 U.S.C. § 1692e(5) by garnishing Barba's account, but Plaintiffs have failed to identify any communication between Allied and Barba that could constitute a threat. Accordingly, Plaintiffs have failed to sufficiently allege violation of 15 U.S.C. § 1692e(5) as to Barba.

///

///

---

[5]Allied does not contest Plaintiffs' characterization of Allied's filings in opposition as threats, though the Court finds this characterization somewhat dubious.

10

### D. 15 U.S.C. § 1692e(10)

Allied further argues that Plaintiffs have not pleaded sufficient facts to support their claim that Allied violated 15 U.S.C. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." (*See* ECF No. 15 at 12, 19.)

As to Gonzalez, Plaintiffs allege that Allied violated 15 U.S.C. § 1692e(10) by representing to the court in the Debt Action that it could collect on the Debt when the Debt had already been paid. (ECF No. 10 at ¶ 72; ECF No. 18 at 11.) Allied counters that it was lawful to collect on the Debt (*see, e.g.*, ECF No. 15 at 20), but the lawfulness of Allied's conduct may turn on whether it knew that the Debt was paid. Accordingly, Plaintiffs have pleaded sufficient facts to show that Allied may have violated 15 U.S.C. § 1692e(10) as to Gonzalez.

As to Barba, Plaintiffs allege that Allied violated 15 U.S.C. § 1692e(10) by garnishing funds from Barba's bank account. (ECF No. 18 at 19.) Barba essentially contends that the fact of mistaken garnishment itself is a sufficient basis for the Court to infer that Allied used a false representation or deceptive means to collect the Debt. Allied counters it did not make false, deceptive, or misleading representations in connection with the mistaken garnishment, explaining that Barba's bank made the mistake of garnishing funds from Barba's account entirely on its own. (ECF No. 15 at 13.) Barba's allegation of mistaken garnishment is insufficient to support his claim. As in *Twombly*, where parallel conduct alone did not suggest conspiracy, 550 U.S. at 556-57, mistaken garnishment alone does not suggest misrepresentation, particularly when, as here, Barba and Retiguin shared the name "Jamie Retiguin." Absent additional facts, mistaken garnishment alone suggests mistake—not misrepresentation. Accordingly, Plaintiffs have failed to plead sufficient facts to show that Allied violated 15 U.S.C. § 1692e(10) as to Barba.

### E. 15 U.S.C. § 1692f

Allied argues that Plaintiffs have not pleaded facts sufficient to show that Allied violated 15 U.S.C. § 1692f. (ECF No. 15 at 25.) Under 15 U.S.C. § 1692f, "[a] debt collector

may not use unfair or unconscionable means to collect or attempt to collect any debt." The statute contains a non-exhaustive list of examples of conduct that violates this section. *Id.* Plaintiffs allege that Allied's conduct falls within the following example from that list: "The collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). (ECF No. 18 at 10.)

As to Gonzalez, Plaintiffs allege that Allied violated 15 U.S.C. § 1692f by seeking a writ of execution against Gonzalez and opposing Gonzalez's claim of exemption from execution when the Debt had already been paid. (ECF No. 10 at ¶ 73; ECF No. 18 at 10.) Accepting Plaintiffs' allegations as true, Allied "knew that the debt had been paid and nevertheless continued to attempt to collect the debt." (ECF No. 18 at 10 (citing ECF No. 10 at 5).) This factual allegation is sufficient to make it plausible that Allied collected an amount that was not permitted by law in violation of 15 U.S.C. § 1692f as to Gonzalez.

As to Barba, it is plausible that Allied collected money from Barba when it was not authorized to do so by any agreement or by law based on Plaintiffs' allegation that funds in Barba's bank account were garnished.

Accordingly, Plaintiffs have pleaded sufficient facts to show that Allied may have violated 15 U.S.C. § 1692f as to both Gonzalez and Barba.

**V.    AMENDMENT**

The Court grants Plaintiffs leave to amend because it is conceivable that Plaintiffs could amend their FAC to sufficiently allege violation of 15 U.S.C. §§ 1692e(5) and (10) as to Barba as well as provisions of the FDCPA that appeared in their response but not their FAC (15 U.S.C. §§ 1692e (generally), 1692e(2), and 1692d). *See Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.").

///

///

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Allied's Motion to Dismiss (ECF No. 15) is granted in part and denied in part. It is granted as to Plaintiffs' claim that Allied violated 15 U.S.C. §§ 1692e(5) and (10) as to Barba. It is denied as to Plaintiffs' remaining claims: violation of 15 U.S.C. §§ 1692e(5) and (10) as to Gonzalez and violation of 15 U.S.C. § 1692f as to both Gonzalez and Barba. Plaintiffs will be given leave to file an amended complaint to cure the deficiencies with respect to their claims that Allied violated 15 U.S.C. §§ 1692e(5) and (10) as to Barba and that Allied violated various provisions of the FDCPA as to both Plaintiffs that are not specified in the FAC (including 15 U.S.C. §§ 1692e (generally), 1692e(2), and 1692d) within ten (10) days. Failure to file an amended complaint will result in dismissal of these claims with prejudice, and the case will proceed on Plaintiffs' remaining claims.

It is further ordered that Plaintiffs' Motion to Strike (ECF No. 21) is denied.

It is further ordered that Allied's Motion to Exceed Page Limits (ECF No. 22) is granted.

DATED THIS 5th day of February 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE