UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KARLA GONZALEZ and JAIME RETIGUIN BARBA, SR., <br><br>Plaintiffs, <br><br>v. <br><br>ALLIED COLLECTION SERVICES, INC., <br><br>Defendant. | Case No. 2:16-cv-02909-MMD-VCF <br><br>ORDER |

## I. SUMMARY

Defendant Allied Collection Services, Inc. ("Allied") and Plaintiffs Karla Gonzalez ("Gonzalez") and Jaime Retiguin Barba, Sr. ("Barba")[1] (collectively, "Plaintiffs") separately move for summary judgment on Plaintiffs' claims for relief under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (respectively, Plaintiffs' Motion and Allied's Amended Motion)[2] (ECF Nos. 58, 70.) The parties' motions are essentially cross-motions requiring the Court to make the same conclusions as to each. (*Compare* ECF No. 58 *with* ECF No. 70.) Additionally before the Court are Plaintiffs' motion for leave to file a reply affidavit ("Motion for Leave") (ECF No. 88) and Allied's motion to strike ("Motion to Strike") (ECF No. 92).[3]

///

---

[1] Certain supporting documents identify Plaintiff as Baraba, not Barba. (ECF Nos. 58-8, 58-9) The Court uses Barba because that is the spelling provided in the Complaint and subsequent briefing. (*See, e.g.*, ECF Nos. 1, 58.)

[2] Allied filed both a motion for summary judgment (ECF No. 62) and the Amended Motion (ECF No. 70). The Amended Motion is the operative motion which this Court considers. The initial motion (ECF No. 62) is therefore denied as moot.

[3] The Court has considered the respective responses and replies to the various motions. (*See* ECF Nos. 78, 82, 94, 95, 89, 90, 96, 97.) The Court has also considered Allied's Errata to its response to Plaintiffs' Motion (ECF Nos. 79, 79-1, 79-2).

For the reasons stated below, the Court grants Plaintiffs' Motion in part and deny it in part, finding favorably for Plaintiffs on Gonzalez's claims. The Court likewise grants Allied's Amended Motion in part and deny it in part, finding favorably for Allied on Barba's remaining claim. The Court further denies Plaintiffs' Motion for Leave and Allied's Motion to Strike.

## II.     RELEVANT BACKGROUND

The following facts are uncontested unless otherwise noted.

This matter stems from Allied's attempt to collect debt owed to its clients by Plaintiffs' family member, "Jamie Retiguin," who is not a party to this action. (ECF Nos. 58-5, 58-6, 38.) Retiguin is Barba's son, and was at all times relevant to this action Gonzalez's husband. (ECF No. 1 at 3.) The Court refers to Plaintiff Barba as "Barba" and to his son as "Retiguin." Retiguin's full name is Jamie Retiguin Zavala (ECF No. 58-10).

Allied, acting as debt collection agent for medical provider clients—Charles Mendoza, MD ("Mendoza"), Christopher Fisher, M.D. ("Fisher"), and Allan Macintyre, M.D. ("Macintyre") (collectively, "the Providers")—obtained a confession of judgment ("Judgment") in a state court proceeding ("Debt Action")[4] against Retiguin on June 2, 2016 for the principal amount of $3,959.84. (ECF No. 58-5 at 5, 7; ECF No. 70-1 at 27.) This amount constitutes the total debt owed to the Providers. (*Id.*) Per the Judgment, Retiguin was to make installment payments against the debt, but if he defaulted on the payments Retiguin would be liable for "interest on the principal at the legal rate per annum," for attorneys' fees, court costs and any documentation preparation fee. (ECF No. 58-5 at 5–6.) Retiguin defaulted on his payments and Allied filed a writ of execution naming "Jamie Retiguin" as the garnishee ("Writ"). (ECF No. 58-6 at 2.) The Writ was for a total of $5,101.24 (including principal, interest, attorneys' fees and costs, as noted in the Judgment) and additional amounts of accrued interest, costs and fees that had accrued since the Judgment was entered. (*Compare id. with* ECF No. 58-5 at 5–6.)

///

---

[4]The Court takes judicial notice of the documents filed in the Debt Action. *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

2

The Writ was addressed to Retiguin's bank—Bank of America, 1933 W. Craig Rd. N. Las Vegas, NV 89032 and listed the last four digits of Retiguin's social security number. (ECF No. 58-6 at 3.) It is undisputed that Barba does not maintain accounts at the same branch. (ECF No. 90 at 2.) Possibly due to Retiguin and Barba's shared names, Barba's bank account was garnished $4,448.31 instead of Retiguin's. (ECF Nos. 58-7, 58-8, 15-2, 58-9.) Barba notified Allied of the mistake. (ECF No. 15-2 at 12; ECF No. 58-9 (Barba's letter to Allied stating "[w]e have the same name and I believe it was an honest mistake").) Barba's bank also charged a $125 *fee* related to the garnishment. (ECF No. 58-7; ECF No. 70-1 at 23 (Smith Decl. at 82–83 (Plaintiffs' counsel questioning Smith about the charge which counsel refers to as the *bank's* charge)).)[5] A bank employee informed Allied that her mistake resulted in Barba's account being charged. (ECF No. 70-1 at 23 (Smith depo. at 83–84).)

Allied reimbursed the funds it received, $4,373.94, to Barba's bank. (ECF No. 58-8; ECF No. 58-1 at 3; ECF No. 70-2 at 92.) The returned funds did not include a $74.37 commission the North Las Vegas Township Constable charged for executing the Writ or the $125 fee. (ECF No. 58-8 at 2.)

At this point, Retiguin had made payments against the Judgment/Writ totaling $816. (ECF No. 58-12 at 2 (noting payments of this amount to be assessed against the Writ amount); ECF No. 58-25 at 2 (Allied's records documenting $500 credit card payment and two "Paymaster Check payments of $158 each); *see also* ECF No. 70-1 at 38).) Retiguin's insurance provider, California Ironworkers Field Welfare Plan ("CIFWP") made an additional payment of $685.44 against the debt directly to a provider. (ECF No. 82-3 at 19 (CIFWP's Check #: 3690612 issued on 07/21/2016 for $685.44; ECF No. 58-21 (documents same payment and notes "Mendoza" as the provider)); ECF No. 82-3 at 20

///

---

[5]The total amount taken from Barba's bank account was $4,573.31. In his declaration Barba stated that Allied took this total amount from his account (ECF No. 58-1 at 2; *but see* ECF No. 58-9 (Barba's letter to Allied stating "you have withdrawn $4,448.31 from my bank account.") However, the records show that only $4,373.94 was actually transferred to Allied by the constable that executed the Writ. (*See* ECF No. 58-8; ECF No. 70-2 at 92; ECF No. 70-1 at 23 (Smith depo. at 82–83).)

3

(documenting the check as being received by the provider on "08/09/2016"); ECF No. 58-25 at 2 (Allied's records documenting the payment on "08/29/2019," "Direct To Client").)

On September 1, 2016, Allied filed another writ of execution ("Second Writ") naming Gonzalez as the garnishee. (ECF No. 58-12 at 2–3; ECF No. 70-1 at 30 (Smith decl. at 111).) The Second Writ included the *full amount of the Judgment* plus the amounts stemming from Retiguin's default and required Gonzalez to contribute 12.5% of her wages against the Judgment—the amount of her income that constituted community property. (*Id.*) The Second Writ documents that the total payments of $816.00 which Retiguin had made directly to Allied was to be assessed against the overall balance, leaving a "net" balance of $ 4,493.34. (*Id.* at 2.) The Second Writ did not account for the additional payment by CIFWP.

Gonzalez filed a claim of exemption in the Debt Action, and a subsequent amended claim of exemption, characterizing Retiguin's debt as his separate debt and therefore not her obligation. (ECF Nos. 58-13, 58-14.) Gonzalez ultimately conceded that the debt was community debt. (ECF No. 58-27 at 2.)

Allied's representative, Allison Smith ("Smith"), testified that by the beginning of November 2016 "most" of the total debt had been paid.[6] (*See, e.g.*, ECF No. 70-1 at 63 (Smith depo. at 242); *see also id.* at 39 (Smith depo. at 147-48 (indicating that MacIntyre was paid in full as of November 3, 2016 after Fisher accepted payment as satisfying the full debt owed)); ECF No. 58-25 at 17 ("10/11/2016 . . . rcvd called from Nevalyn on Dash 2. The Patient has VOC . . . They are going to bill VOC."); ECF No. 70-1 at 29 (Smith depo. at 106-07 (stating that the balance on one of the client's accounts was adjusted to "zero on 10-28")).) In its reply to Gonzalez' exemption filing on November 7, 2016, Allied acknowledged that Gonzalez provided evidence that a payment in the "amount of $1.943.64" had been made to Fisher and MacIntyre's business entity—"Desert Surgical Associates." (ECF No. 58-19 at 4; ECF No. 82-3 at 10, 12.) Nonetheless, Allied contested

///

---

[6]Plaintiffs contend that all debt would have been paid by October 11, 2016 when Fisher was fully paid. (ECF No. 58 at 12.)

1 whether the amounts were in fact "received" by the clients and would be accepted as full
2 payment for the debt owed to them, indicating that Allied needed further information from
3 the clients. (*Id.*)  At a hearing the same day, Allied agreed to release Gonzalez from
4 garnishment. (ECF No. 58-27 at 2.) Allied claims it did so merely for business reasons.
5 (*See, e.g.*, ECF No. 78 at 2.)

Plaintiffs brought this action in December 2016, contending that Allied violated certain provisions of the FDCPA, by engaging in unfair practices to collect on the Judgment. (ECF No. 1.)

### III. PLAINTIFFS' MOTION FOR LEAVE TO FILE REPLY AFFIDAVIT (ECF NO. 88)

Plaintiffs seeks to file a reply affidavit ("Reply Affidavit") in support of their Motion (ECF No. 58). (ECF Nos. 88, 88-1.) The Court will deny Plaintiffs' Motion for Leave.

Reply affidavits are generally allowed as evidence submitted directly in response to an opposing party's brief and thus not new evidence. *See, e.g.*, *Terrell v. Contra Costa County,* 232 Fed. Appx. 626, 629 n.2 (9th Cir. Apr. 16, 2007) (citation omitted) (providing that reply evidence is not new where the reply brief addressed the same set of facts supplied in opposition to the motion but provides the full context to the opposing party's selected recitation of the facts). However, a witness providing such affidavit must have been previously disclosed under Federal Rule of Civil Procedure 26(a). *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (providing that "a party must without awaiting a discovery request, provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment"); *see also* Rule 37(c)(1) (relevantly providing that a party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence *at a trial*, at a hearing, *or on a motion* any witness or information not so disclosed).

///
///

Here, Plaintiffs offer the Reply Affidavit to supplement their argument that Allied attempted to collect on the full amount of the Judgment even though a portion was already paid by the time Allied filed the Second Writ.[7] (ECF Nos. 88, 88-1.) Plaintiffs raised this argument in their Motion. (ECF No. 58 at 10.) Allied opposes the Motion for Leave, arguing *inter alia*, that the Reply Affidavit is irrelevant, presents "alternative facts," and that Plaintiffs did not disclose the witness whose affidavit constitutes the Reply Affidavit. (ECF No. 94.) Plaintiffs do not contest that the witness was previously undisclosed. (ECF No. 96.) Plaintiff cannot rely on the affidavit of a previously undisclosed witness. The Court accordingly deny the Motion for Leave (ECF No. 88).

## IV. ALLIED'S MOTION TO STRIKE (ECF NO. 92)

Allied filed its Motion to Strike with an attached declaration on September 16, 2018. (ECF Nos. 92, 92-1.) The Motion to Strike essentially seeks to strike factual arguments and supporting evidence in Plaintiffs' Motion that Allied challenges. (*See id.*) Plaintiffs filed an opposition contending that the Motion to Strike amounts to a surreply which is impermissible absent leave of court. (ECF No. 95). The Court agrees with Plaintiffs.

The content of the declaration, which Allied uses to provide the arguments for the Motion to Strike, is an obvious attempt to submit a surreply. (*See* ECF No. 92-1 (contending that Plaintiffs arguments and evidence are not supported by the evidence but declarant does not directly address the admissibility of Plaintiffs' evidence).) The Motion to Strike and accompanying declaration are therefore impermissible because Allied did not seek leave of Court to submit a surreply. *See* LR 7-2(b) ("Surreplies are not permitted without leave of Cou."); LR 7-2(g) ("Supplementation prohibited without leave of court . . . The judge may strike supplemental filings made without leave of court."). Accordingly, the Court denies Allied's Motion to Strike (ECF No. 92).[8]

///

---

[7] Plaintiffs file the Motion for Leave the same day they filed their reply. (ECF Nos. 88, 89.)

[8] In its reply brief Allied requests that the Court construes the Motion to Strike and the 22-page declaration as a "Motion for Leave to file a Supplement" because it could not

6

## V. PLAINTIFFS' MOTION (ECF NO. 58) AND ALLIED'S AMENDED MOTION (ECF NO. 70)

### A. Legal Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Moreover, a court views all facts and draws all inferences in

///

///

---

possibly respond to all of Plaintiffs' "alternative facts" in Plaintiffs' Motion. (ECF No. 97 at 2.) The Court declines to do so, and notes that the declaration (ECF No. 92-1) provides no clarity beyond what the Court would necessarily need to determine in considering the material facts before it.

the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting *William W. Schwarzer, et al.*, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992)) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

### B. Discussion

The Ninth Circuit treats the FDCPA as a strict liability statute. *Clark v. Capital Credit & Collection Serv., Inc.,* 460 F.3d 1162, 1175 (9th Cir. 2006). In analyzing FDCPA claims, representations by a debt collector are viewed from the perspective of the objective least sophisticated debtor or consumer. *See Gonzales v. Arrow Fin. Servs, LLC*, 660 F.3d 1055, 1061–63 & n.2 (9th Cir. 2011) (citations omitted) (applying the "least sophisticated debtor standard" and noting that the "[t]he 'least sophisticated debtor' or 'least sophisticated consumer' standard is employed by the majority of the circuits").

Here, the parties' cross motions for summary judgment require the Court to decide whether the undisputed evidence compel a finding that Allied violated 15 U.S.C. §§ 1692e(5), 1692e(10) and 1692f. (ECF No. 1 at 6 (provides the alleged violated provisions).)[9] The Court will consider liability under each provision in turn.

#### 1. Preliminary Considerations

The Court addresses two preliminary matters before proceeding to the merits.

First, in its Amended Motion and its opposition to Plaintiffs' Motion Allied repeats an argument based on a legal issue that this Court has already decided in its order

///

---

[9] Except for Allied's insistence that Barba is not a "consumer" as defined under the FDCPA—discussed *infra*, the parties only argue the matter of whether a violation as been committed. No other element for establishing a claim under the FDCPA is at issue. *See, e.g.*, *Douglass v. Convergent Outsourcing,* 765 F.3d 299, 303 (3d Cir.2014). ("To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is

8

addressing Allied's motion to dismiss ("MTD Order"). (ECF Nos. 38; 15; ECF No. 70 at 6–10; ECF No. 78 at 11–12.) Specifically, Allied reargues that Barba is not a consumer, albeit changing the term "consumer" to "debtor" in its Amended Motion, as defined in 15 U.S.C. § 1692a(3) ((*Compare* ECF No. 15 at 11 *with* ECF No. 70 at 6–10; ECF No. 78 at 11–12). *See* § 1692a(3) ("The term 'consumer' means any natural person obligated *or allegedly obligated* to pay any debt.") (emphasis added). Allied is confined to the Court's finding in the MTD Order that Barba is legally deemed a consumer. (ECF No. 38 at 9.)[10] Allied has at no point sought reconsideration of the Court's finding, nor has it here cited any persuasive authority[11] that could lead the Court to conclude otherwise. (*See* ECF No. 70 at 6–10; ECF No. 78 at 11–12.)

Second, in the MTD Order the Court dismissed Barba's individual claims for violations of §§ 1692e(5) and 1692e(10) with leave to amend. (ECF No. 38 at 10–13.) The Court noted that "[f]ailure to file an amended complaint will result in dismissal of these claims with prejudice, and the case will proceed on Plaintiffs' remaining claims." (*Id.* at 13.) Plaintiffs did not subsequently file an amended complaint. Therefore, the Court dismisses Barba's claims for violations of §§ 1692e(5) and 1692e(10) with prejudice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an

///

a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.").

[10](*See id.* (citing "Federal district courts in the Ninth Circuit [that] have found that [the FDCPA . . . protect[s] consumers who were subjected to collection efforts for obligations they did not owe,' *Davis v. Midland Funding, LLC*, 41 F. Supp. 3d 919, 924 (E.D. Cal. 2014); *see also Gonzalez v. Law Firm of Sam Chandra, APC*, No. 13-CV-0097-TOR, 2013 WL 4758944, at *3 (E.D. Wash. Sept. 4, 2013), though the Ninth Circuit has not yet spoken on this issue, Davis, 41 F. Supp. 3d at 924"); *id.* at 10 (noting reliance on *Dunham v. Portfolio Recovery Assocs.*, LLC, 663 F.3d 997, 1002 (8th Cir. 2011) which *Davis* and *Gonzalez* relied on and that concluded that individuals who mistakenly received debt collection letters qualify as consumers under the FDCPA).)

[11]Allied provides two cases in its Motion to support its argument that Barba is not a consumer. *Christy v. EOS CCA*, 905 F. Supp. 2d 648 (E.D. Pa. 2012) and *Cole v. Toll*, No. 07-0590, 2007 WL 4105382 (E.D. Pa. Nov. 16, 2007). (ECF No. 70 at 22–23.) The Court already noted that it found Christy's analysis unpersuasive. (ECF No. 38 at 10.) *Cole* is factually distinguishable as it only relevantly concerns whether executors of an estate were consumers. 2007 WL 4105382, at *6.

order requiring amendment of complaint); *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (noting that district courts have the inherent power to control their dockets and "[i]n the exercise of that power, they may impose sanctions including, where appropriate . . . dismissal" of a case). Accordingly, as to Barba the Court discusses a single claim for violation of § 1692f.

### 2. Barba and Gonzalez's Claims for Relief Under 15 U.S.C. § 1692f

The parties disagree as to whether it has been established that Allied violated § 1692f. (*See, e.g.*, ECF Nos. 58, 70.) Seeking summary judgment in their favor, both sides argue there are no issues of material fact on the matter. The Court agrees that there are no genuine factual disputes on this claim and will grant each party's motion in part and deny them in part.

Under 15 U.S.C. § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." The statute contains a non-exhaustive list of examples of conduct that violates this section. *Id.* Plaintiffs argue that Allied's conduct falls within the following example from that list: "The collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). (ECF No. 82 at 18–19; ECF No. 58 at 20, 23.)

#### a. Barba

As to Barba, Plaintiffs seek summary judgment and opposes Allied's request for the same, contending that Allied violated § 1692f, because "it cannot be disputed that [Allied] *collected* money from Barba's [bank] account" and it is undisputed that Allied "was neither authorized by any agreement . . . to collect any money from Barba." (ECF No. 82 at 19; ECF No. 58 at 19–21.) (Emphasis added.) Plaintiff misreads § 1692f.

"Statutes must be interpreted, if possible, to give each word some operative effect." *Walters v. Metro. Ed. Enters., Inc.*, 519 U.S. 202, 209 (1997). It is a fundamental cannon of statutory construction that an interpretation of statute should not render any language mere surplusage. *Ratzlaf v. U.S.*, 510 U.S. 135, 140–41 (1994). Thus, § 1692f(1) must be read within the scope of the general preceding language which states that "[*a*] *debt*

*collector* may not use unfair or unconscionable means to collect or attempt to collect any debt." This plain language provides a cause of action for *a debt collector's violation*—that is, it requires the violating conduct to be done by the debt collector. Section 1692f(1) appears to only further define what constitutes unfair and unconscionable means. Plaintiffs cite to nothing in the FDCPA or any case interpreting the statute that makes a debt collector liable for the action of a third party.

Here, Plaintiffs base their claim that Allied collected money from Barba's account on the mere fact that *Barba's bank released* the money to Allied and Allied received the money. (ECF No. 82 at 19 & ECF No. 58 at 19–21 (citing the bank statement).) But, such a narrow look at the facts ignores Allied's argument, substantiated by Smith's deposition testimony, that Barba's bank released the money to Allied based on the bank's own mistake. (ECF No. 70 at 3, 9–10; ECF No. 70-1 at 23, 56–58 (Smith depo. at 83–84, 213–14, 217, 223).) Plaintiffs do not dispute this testimony from Smith. And the undisputed facts do not show that Allied took any affirmative action directed at Barba. Allied addressed the Writ to Retiguin's bank at 1933 W. Craig Rd.—a specific branch where Retiguin was, but Barba was not, a customer. The Writ directed the bank to levy all accounts of "Jamie Retiguin" with a social security number ending in the four digits that match Retiguin's. (ECF No. 58-6 at 3.) Plaintiffs do not contend that Barba's social security number is the same or similar to Retiguin's.

Instead, relying on *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, Plaintiffs argue that Allied should have included Retiguin's additional name—Zavala—in the Writ. 637 F.3d 939, 948 (9th Cir. 2011) (ECF No. 58 at 20–21 (citing *McCollough*); ECF No. 18 at 19.) Allied disagrees, arguing various reasons why it was right to address the Writ with the exact name Retiguin provided on the Judgment. (ECF No. 90 at 14.) In any event, Plaintiffs' argument is not well grounded.

First, the analysis in *McCollough* to which Plaintiffs' cite pertains to the bona fide error defense under § 1692k(c), discussed *infra*, whereby the circuit court discussed whether the defendant's reliance on the information provided by the creditor amounted to

an error or was reasonable. *See id.* That analysis is not applicable to the current consideration under § 1692f. Further, § 1692f clearly requires affirmative conduct by the debt collector, and Allied's failure to include the name Zavala in the Writ is not affirmative conduct. Plaintiffs are essentially asking the Court to read into § 1692f the requirement for a debt collector to include all names of a debtor on a writ. The Court cannot do so. *See McCollough*, 637 F.3d at 951–52 (internal quotation and citations omitted) ("[P]olicy reasoning provides no authority to override the clear statutory language of Congress. [O]ur obligation is to apply the statute as Congress wrote it.").

The cases Plaintiffs otherwise cite to support their position of a violation as to Barba—*Basich v. Patenaude & Felix, APC*, No. 5:11-cv-04406 EJD, 2013 WL 1755484 (N.D. Cal. April 24, 2013) and *Billsie v. Brooksbank*, 525 F. Supp. 2d 1290 (D. N.M. 2007)—provide no such support. (ECF No. 82 at 18–19; ECF No. 58 at 20–21.) *Basich* is factually distinguishable. The debt collector in *Basich*, unlike Allied here, obtained a bank levy against the wrong person. *Basich*, 2013 WL 1755484, at *3–4. In concluding that the debtor could be determined to have violated § 1692f, the *Basich* court specifically noted that "the evidence shows that P & F[–the debt collector—] continued its efforts to levy Plaintiff's bank account even after being told, on numerous occasions, that Plaintiff was not the debtor." *Id.* at *7. Here, Allied's Writ was addressed against the correct debtor—Retiguin. *Billsie*, which involves garnishment also based on the debt collector's mistake regarding the debtor's identity and the debt collector's error in listing social security numbers, is likewise factually distinct from this case. *See Billsie*, 525 F. Supp. 2d at 1298. Therefore, neither *Basich* nor *Billsie* lend support to Plaintiffs here.

The Court concludes that the evidence here leads to one reasonable finding—that Allied did not violated § 1692f. The Court therefore grants summary judgment in Allied's favor on Barba's § 1692f claim.

///

///

///

**b.      Gonzalez**

The Court reaches a different conclusion regarding Gonzalez. As to Gonzalez, Plaintiffs argue that Allied violated § 1692f(1) by misrepresenting the amount of money owed. The Court agrees.

As an initial matter, Allied appears to contend that the "parameters of this case" should be limited at the summary judgment stage to the allegations as noted in the MTD Order. (*See, e.g.*, ECF No. 90 at 16.) Allied quotes language in the MTD Order where the Court found that Plaintiffs had sufficiently alleged a violation of § 1692f as to Gonzalez because Plaintiffs alleged that Allied executed the Second Writ and opposed Gonzalez's claim of exemption even though Allied "knew that *the debt had been paid* and nevertheless continued to attempt to collect on the debt." (*Id.* at 16; ECF No. 70 at 20, 27 (quoting ECF No. 38 at 12).)  The Court disagrees.

Plaintiffs argue broadly that Allied violated the FDCPA "when it attempted to collect on money from Gonzalez that [Allied] was not entitled to" and by misrepresenting the amount owed. (ECF No. 82 at 24–25; ECF No. 58 at 23.) Plaintiffs contend that Allied attempted to collect the full Judgment by filing the Second Writ, even though at least a portion of the debt had been paid by then. (*Id.*)  These are not arguments premised on a new legal theory not asserted in Plaintiffs' Complaint, they are merely factual arguments grounded in § 1692f(1)'s generic language. Plaintiffs' arguments fall squarely within § 1692f(1)'s language that a debt collector uses unfair or unconscionable means where *it* undertakes "[t]he  collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  As such the Court finds that Plaintiffs have not asserted new theories of liability—that would of course be impermissible. *See, e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).

There is no element of surprise here as to liability under § 1692f(1). Allied is liable under the statute if it filed or executed the Second Writ where the amount of debt was only less than the amount asserted to be collected or the debt was paid in its entirety. While

13

Allied focuses on what it "knew" at the time it filed the Second Writ, it is axiomatic that knowledge is irrelevant in this strict liability case. *See, e.g., Gates v. MCT Group, Inc.*, 93 F. Supp. 3d 1182, 1189 (S.D. Cal. 2015) (noting that because the FDCPA "is a strict liability statute, Defendants' knowledge is irrelevant to whether" violation occurred under the statute); *In re Hawaii Fed. Asbestos Cases*, 699 F. Supp. 233, 235 (D. Haw. 1988) ("Under strict liability, culpability is irrelevant.").

The Court concludes that, at minimum, Allied violated § 1692f(1) when it filed the Second Writ because it cannot be disputed that the debt Retiguin owed by that time was less than the actual amount noted in the Second Writ. The undisputed evidence shows that Retiguin's insurer, CIFWP, directly paid a provider, the provider posted the payment and the payment was reflected in Allied's records by August 29, 2016. (ECF No. 82-3 at 19 (CIFWP's Check #: 3690612 issued on 07/21/2016 for $685.44); ECF No. 82-3 at 20 (documenting the check as being received by the provider on "08/09/2016"); ECF No. 58-25 at 2 (Allied's records documenting the payment on "08/29/2019," "Direct To Client").) Nonetheless Allied filed the Second Writ on September 1, 2016, to collect on the full Judgment, including this paid portion of the debt.

The parties argue about which provider was paid, focusing on Mendoza. (*See, e.g.*, ECF No. 70 at 20; ECF No. 90 at 7, 16; ECF No. 58 at 11 n.8.) For example, Allied seeks to create a dispute as to whether Mendoza was paid prior to the filing of the Second Writ. (*See, e.g.*, ECF No. 70 at 20; ECF No. 90 at 7, 16.) Allied cites Gonzalez's declaration in the Debt Action, contending that on September 7, 2016, Anthem Blue Cross and Blue Shield made payments" to Mendoza, in an attempt to establish that a payment was not made to Mendoza before September 7, 2016. (ECF No. 70 at 13; ECF No. 70-4 at 67.) However, Allied's representative, Smith, appears to have conceded the August 29 payment having been made to Mendoza. (ECF No. 70-1 at 27–28 (Smith depo. at 97–105.) In any event, assuming that a September 7 payment was made *to Mendoza*, such payment does nothing to negate the prior payment by CIFWP as noted above. Because the additional payment—irrespective of the provider—had already been paid at the time

14

Allied filed the Second Writ, Allied was not entitled to seek recovery from Gonzalez of a percentage of the *full* Judgment. Therefore Allied violated § 1692f(1) when it filed the Second Writ for the full amount; under the FDCPA it does not matter whether Allied actually knew about the CIFWP payment.[12]

### 3. Gonzalez's Claims Under 15 U.S.C. §§ 1692e(5) and 1692e(10)

Allied contends that Gonzalez cannot established that it violated §§ 1692e(5) and 1692e(10) and that it is therefore entitled to summary judgment on these claims. (*See, e.g.*, ECF No. 70 at 10–20, 23–26; ECF No. 90 at 15–20.) The Court disagrees.

Section 1692e(5) prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." Courts "have determined that liability under § 1692e(5) may arise when a debt collector files and serves a writ of garnishment." *Gomez v. Oxford, LLC*, No. 3:14-cv-477, 2015 WL 58766 at *4 (M.D. Pa. Jan. 5, 2015) (collecting cases from this circuit); *see also Jacquez v. Diem Corp.*, No. CV-02-0500, 2003 WL 25548423, at *3 (D. Ariz. Feb. 20, 2003) (concluding that when the writ is filed, the threat of action prong is also satisfied).

Section 1692e(10) bars "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Material false statements—the only actionable false statements—"are those that could cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." *Afewerki v. Anaya Law Group*, 868 F.3d 771, 773 (9th Cir. 2017).

Here, the same facts upon which the Court rests its finding that Allied violated § 1692f support a conclusion that Allied also violated §§ 1692e(5) and 1692e(10). As to 1692e(5), by filing the Second Writ not reflecting the true amount owed, Allied took action it could not legally take—claiming entitlement to monies beyond what it was entitled.

///

---

[12]Because the Court finds a violation here, the Court does not separately consider whether Allied violated § 1692f based on payments to specific providers or other grounds. It was evident from Smith's deposition testimony (ECF No. 70-1) that Allied's record keeping frustrates any clear understanding as to when specific providers were paid.

15

Allied likewise violated § 1692e(10) because its assertion that Gonzalez was responsible for an amount based on the higher debt balance undoubtedly placed Gonzalez at a disadvantage in responding to Allied's collection efforts.

It is undisputed that at the time Allied executed the Second Writ, Gonzalez was acting pro se with only a short time to respond and without the benefit of discovery. Thus, Allied's representation that Gonzalez had to pay on an amount several hundred dollars higher than the amount owed could have placed Gonzalez at a disadvantage in charting a course to respond to Allied. *See Goodrow v. Friedman & MacFayden, P.A.*, No. 3:11-cv-20, 2013 WL 3894842, at *13 (E.D. Va July 26, 2013) ("While some misrepresentations appear minor, the cumulative effect of receiving conflicting information in a condensed time frame could plausibly mislead the least sophisticated consumer. A confused understanding of the correct amount of debt and fees owed could affect a consumer's ability to make intelligent decisions with respect to the debt."). Additionally, in her declaration in the Debt Action Gonzalez stated that she lived paycheck to paycheck and that monthly expenses exceeded her income. (ECF No. 58-16 at 2.) Someone under such financial stress would undoubtedly be more confounded by the higher stated amount. It is therefore conceivable that Gonzalez would be able to more easily assess how to seek assistance to help pay on the lower amount than the higher amount. *See also Afewerki*, 868 F.3d at 777 ("[T]he least sophisticated debtor in Afewerki's position, concerned that he had been sued, may well have simply paid the amount demanded in the complaint and would have overpaid.") Accordingly, the Court finds Allied liable under both §§ 1692e(5) and 1692e(10).

The Court next considers whether Allied may nonetheless be protected by the bona-fide error defense.

///

///

///

///

### 4. Bona-Fide Error Defense

In its response to Plaintiffs' Motion, Allied claims that any violation of the FDCPA was a result of a bona-fide error and thus under § 1692k(c) Allied should not be held liable. (ECF No. 78 at 11.)[13] The Court finds to the contrary.

"Although the FDCPA is a strict liability statute, it excepts from liability those debt collectors who satisfy the 'narrow' bona fide error defense." *McCollough,* 637 F.3d at 948. Section 1692k(c) provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." *McCollough,* 637 F.3d at 948 (internal quotation and citations omitted). "[T]o qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *Id.*

Allied seeks to avail itself of § 1692k(c)'s protection, making particular arguments as to both Barba and Gonzalez. (ECF No. 78 at 11.) The Court considers only the arguments pertaining to Gonzalez given its ruling on Barba's sole remaining claim.

Pertinent to Gonzalez, Allied argues that any violation was a bona-fide error because the debt was a community debt and therefore Allied lawfully obtained the Second Writ against Gonzalez and it released Gonzalez from garnishment after it discovered that a significant portion of the debt had been paid. (*Id.*)

Allied's bona-fide error argument misses the mark because the Court finds liability at the time the Second Writ was filed. Smith's deposition testimony supports the Court's conclusion. Smith essentially testified that Allied did not call back the Second Writ to amend it to reflect the correct amount because it would result in additional fees and Allied

///

---

[13]*But see* ECF No. 90 at 14 (Allied arguing that it is not claiming mistake as a defense).

17

would not call back a writ to amend it. (ECF No. 70-1 at 30 (Smith depo. at 110–12).) Thus, the incorrect amount noted on the Second Writ was not due to error, but instead deliberate inaction.[14] Additionally, Allied fails to argue the other necessary elements to qualify for the bona-fide error defense and thus fail to carry its burden under § 1692k(c).[15] (*See* ECF No. 78 at 11.) The Court therefore finds that Allied is not excepted from liability to Gonzalez under § 1692k(c).

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Allied's original motion for summary (ECF No. 62) is denied as moot, having been supplanted by Allied's Amended Motion for Summary Judgment (ECF No. 70).

It is further ordered that Plaintiffs' Motion for Leave to File Reply Affidavit regarding its motion for summary judgment (ECF No. 88) is denied.

It is further ordered that Allied's Motion to Strike (ECF No. 92) is denied.

It is further ordered that Plaintiffs' motion for summary judgment (ECF No. 58) is granted in part and denied in part. It is granted as to Gonzalez's claims, but denied on Barba's sole remaining claim.

///

///

///

///

///

---

[14]The inaccurate amount of the Second Writ is also unaffected by that fact that a percentage of the debt was community obligation.

[15]This is assuming without deciding that Allied has properly asserted the bona fide error defense. Plaintiffs contend that Allied has impermissibly asserted this affirmative defense for the first time on summary judgment. (*See* ECF No. 82 at 20.)

18

It is further ordered that Allied's Amended Motion for Summary Judgment (ECF No. 70) is likewise granted in part and denied in part. It is granted as to Barba's claim, but denied as to Gonzalez's claims.

DATED THIS 6th day of February 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE